# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**KATHY REED**                                                               **PLAINTIFF**

**V.**                                              **CIVIL ACTION NO.1:09CV84-SA-JAD**

**ANA FLORES, M.D., and**
**THE MEYER EYE GROUP**                                                   **DEFENDANTS**

## MEMORANDUM OPINION

Before the Court is Ana Flores' Motion to Exclude Expert Testimony and, if Granted, Motion for Summary Judgment [41]. After reviewing the motion, response, rules, and authorities, the Court finds as follows:

## I. BACKGROUND

In December 2007, Plaintiff, Kathy Reed, saw her local optometrist, Dr. Ray Lacey, for a problem concerning her left eye. At that time, Dr. Lacey referred Plaintiff to Defendant, Dr. Ana Flores, a retinal specialist. Dr. Flores diagnosed Plaintiff with a vitreous hemorrhage in the left eye. On December 14, 2007, Plaintiff experienced additional problems with her left eye, and she immediately contacted Dr. Lacey as well as Dr. Flores' office in Memphis, Tennessee. Dr. Lacey advised Plaintiff that she should come to his office the following morning. Dr. Flores was not then available to speak with Plaintiff but did return Plaintiff's phone call later that night. After speaking to the Plaintiff, Dr. Flores says that she suspected Plaintiff had a detached retina. However, Plaintiff claims that Dr. Flores advised her that it was a vitreous hemorrhage, and that she could either come to Memphis to be seen by Dr. Flores or wait and be seen by Dr. Lacey the following morning before traveling to Memphis. Plaintiff opted to see Dr. Lacey the following

1

morning. Plaintiff alleges that she went ahead and packed her luggage, thinking that she would be going to Dr. Flores' office in Memphis upon being seen by Dr. Lacey. According to Dr. Lacey and the Plaintiff, Dr. Lacey examined Plaintiff's left eye and reported his findings to Dr. Flores by phone. Dr. Lacey further claims that Dr. Flores told him that she believed Plaintiff's vision problem was a recurrence of the vitreous hemorrhage, and that it was not necessary for Plaintiff to be seen immediately. Dr. Lacey states that he then relayed this information to Plaintiff.

Plaintiff subsequently went to Dr. Flores' office in Columbus on the following Thursday. Dr. Flores examined Plaintiff's eye and advised her that emergency surgery was necessary as her retina had detached. As such, Plaintiff went to Dr. Flores' office in Memphis to have the surgery. Plaintiff alleges that despite having several surgeries, she has suffered substantial and permanent loss of vision in her left eye. Plaintiff filed this suit against Defendants on October 3, 2008, alleging that Dr. Flores' failure to advise Plaintiff and Plaintiff's optometrist of the necessity for immediate care constitutes medical negligence. Dr. Flores denies that she advised Plaintiff and Dr. Lacey that Plaintiff did not need immediate examination. Dr. Flores asserts that Plaintiff's medical file contains a copy of a document on which Dr. Flores allegedly made contemporaneous notes of communication with Plaintiff from Sunday up until the Thursday when she saw Plaintiff. Dr. Flores contends that this copy of her notes shows that Plaintiff and Dr. Lacey are incorrect in regards to what they were told.

On August 10, 2010, Dr. Flores filed a Motion to Exclude Expert Testimony and, if Granted, Motion for Summary Judgment, asserting that the opinions of Plaintiff's medical expert are unreliable and should be excluded, and that Defendant should be entitled to judgment as a matter of law.

## II. DAUBERT MOTION

A.  Legal Standard

Federal Rule of Evidence 702 allows testimony from "a witness qualified as an expert by knowledge, skill, experience, training, or education" if such testimony will assist the trier of fact and "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702.

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), the United States Supreme Court set out the criteria that district courts are to follow in assessing challenged expert testimony offered under Federal Rule of Evidence 702. The Court stated, "Proposed testimony must be supported by appropriate validation – i.e., 'good grounds,' based on what is known. In short, the requirement that an expert's testimony pertains to 'scientific knowledge' establishes a standard of evidentiary reliability." Id. at 590, 113 S. Ct. 2786. Moreover, the Supreme Court held that a trial court has a duty to screen expert testimony for both its relevance and reliability. Id., 113 S. Ct. 2786. An expert, to state an opinion, must have a "reliable basis in the knowledge and experience of his discipline." Id. at 592, 113 S. Ct. 2786. Under Rule 703, an expert must base his opinion upon facts and data of a type reasonably relied upon by experts in the field. Id. at 595, 113 S. Ct. 2786. Thus, this Court must determine that the reasoning and methodology underlying the testimony is scientifically valid and that the reasoning and methodology can properly be applied to the facts in issue. Id. at 592-93, 113 S. Ct. 2786.

Although the Supreme Court has suggested that the Daubert standard is a flexible one, the district court should "make certain that an expert, whether basing testimony upon

professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999); Daubert, 509 U.S. at 592, 113 S. Ct. 2786; Vogler v. Blackmore, 352 F.3d 150 (5th Cir. 2003).

Daubert also instructs the trial court on the procedural mechanics for resolving disputes relative to the expert's competence to testify under the standards enunciated in that opinion. That is, Daubert directs that the district court determine admissibility under Rule 702 by following the directions provided in Federal Rule of Evidence 104(a). Daubert, 509 U.S. at 592, 113 S. Ct. 2786. Rule 104(a) requires the trial judge to conduct preliminary fact-finding and make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Id. at 592-93, 113 S. Ct. 2786.

The party sponsoring the expert testimony has the burden of showing that the expert's findings and conclusions are based upon the scientific method and, therefore, are reliable. "This requires some objective, independent validation of the expert's methodology. The expert's assurances that he has utilized generally accepted scientific methodology is insufficient." Moore v. Ashland Chem., Inc., 151 F.3d 269, 276 (5th Cir. 1998). However, "[t]he proponent need not prove to the judge that the expert's opinion is correct, but [they] must prove by a preponderance of the evidence that the testimony is reliable." Id.

B. Analysis and Discussion

In this case, Plaintiff has designated Dr. Jacob Plotkin as her only expert. Dr. Plotkin practices in the field of general ophthalmology. Defendant's motion seeks to exclude Dr. Plotkin's testimony as unreliable. While Defendant never explicitly specifies which parts of Dr.

Plotkin's testimony she deems unreliable, Defendant's Motion *only* references and concerns one portion of Dr. Plotkin's deposition testimony. Specifically, Defendant asserts that Dr. Plotkin "has based his opinions on his unsubstantiated belief that a portion of the medical record is not original." The portion of the medical record that Defendant refers to is the copy of the Defendant's notes where Defendant alleges she contemporaneously wrote down her conversations with Plaintiff. In regards to this, Dr. Plotkin testified as follows:

> Q: How would that change your opinion, or would it change your opinion?
>
> A: It appears to me that a large part of this case has to do with a disagreement between the parties as to whether or not Dr. Flores, in fact, warned the patient that she might have a retinal detachment and in some way advised her that it was important for her to come and see a retinal specialist such as yourself as soon as possible to have it evaluated and treated.
> . . .
>
> But the note that we had just reread and was - - the question was if it can be proved to be authentic suggests that Dr. Flores, in fact, did warn the patient that she had a serious problem and needed to be seen right away. So if, in fact, she kept a contempor. . . a contemporaneous record of her conversations and that can be proven to be an original, then that would affect my opinion.

When Dr. Plotkin was further questioned about why he thought the medical record in question was not authentic or a "contemporaneous record," he testified as follows:

> A: For instance, take this document, and again, I don't know how Dr. Flores handles her documentation, but most . . . doctors handle these types of documentations more or less in a similar way. . . When I get a call from a patient or about a patient or a conversation with another doctor about a patient, the first thing I do, if I'm in the office, is get the medical record and write that note, date it and sign it, and put it in the medical record. If I'm not in the office, I'll jot down the note, and as soon as I get to the office, I will put that note in the medical record. If it's not that day, it's the next day.
>
> Now, if I then have a subsequent conversation with the patient or another doctor about that patient's medical care, I will then write that into the medical record. Again, if I am not in the office, I will sit down and write in on a piece of paper so I can recollect the conversation, and then I'll

> usually put the same document in the medical record as quickly as I can so that it isn't misplaced or lost. And I understood from Dr. Flores' testimony that she kept this piece of paper over the course of three or four days. She even took it into the operating room with her on a day that she normally operates. I found that unusual.
>
> And, of course, I'm not a forensic expert, as you point out. I don't know if this is an original document. But based on my review of the document and the testimony that was provided, that seemed a little bit unusual and made this document somewhat suspect in my opinion.

Here Dr. Plotkin admittedly is not qualified to testify as a forensic expert. Dr. Plotkin did not use a scientific method to arrive at his conclusion that the copied document is not an original. Dr. Plotkin's conclusion is merely non-scientific, inappropriate opinion evidence and thus is not fit for the purpose it is being offered and would not assist the jury in its deliberations. Plaintiff even concedes that the "authenticity of that document has nothing whatsoever to do with the medical opinions Dr. Plotkin will be called to testify to." Therefore, Defendant's Motion is granted in that Dr. Plotkin's conclusions regarding the authenticity of Defendant's document cannot be offered at trial.

To the extent Defendant meant to exclude *all* of Dr. Plotkin's testimony, this motion is denied.[1] Defendant did not specify any other portion(s) of Dr. Plotkin's testimony she found unreliable. Further, Dr. Plotkin, as an ophthalmologist, may testify regarding the generalized and accepted standard of care in this case, even though he does not actually perform retinal surgery. A "witness qualified as an expert is not strictly confined to his area of practice, but may testify concerning related applications; 'a lack of specialization does not affect the admissibility of the opinion, but only its weight.'" Meadowcrest Living Ctr., LLC v. Hanover Ins. Co., 2008 WL

---

[1] Defendant is also moving for summary judgment for failure to provide an expert opinion as required by Mississippi law if her motion to exclude is granted. As such, the Court assumes that Defendant actually meant to exclude all of Dr. Plotkin's testimony, despite Defendant's failure to discuss any other portion of testimony, other than that already examined by the Court.

2959707, at *6 (E.D. La. July 30, 2008) (citing Wheeler v. John Deere Co., 935 F.2d 1090, 1100 (10th Cir. 1991)); Lavespere v. Niagra Mach. & Tool Works, Inc., 910 F.2d 167, 176-77 (5th Cir. 1990), *abrogated on other grounds by* Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir. 1996) (permitting mechanical engineer who never designed a press brake to testify as to safety of brake design). "[I]t is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 782 (3d Cir. 1996) (accepting more general qualifications in holding that a treating physician did not have to practice a particular specialty in order to testify concerning certain matters); see also Gaydar v. Sociedad Instituto Gineco-Quiruigico y Plaintificacion Familiar, 345 F.3d 15, 25 (1st Cir. 2003) (it would be reversible error to exclude a physician's expert testimony, in a case involving alleged malpractice during an abortion, for the sole reason that his specialty was something other than gynecology or obstetrics).

### III. SUMMARY JUDGMENT MOTION

A. Legal Standard

Summary judgment is warranted under Rule 56(c) when evidence reveals no genuine dispute regarding any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S. Ct. 2548. Conclusory allegations, speculation,

7

unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Id. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." Id.

B. Analysis and Discussion

Defendant asserts that she should be entitled to judgment as a matter of law if her motion to exclude is granted. Defendant contends that this is because absent expert medical testimony, Plaintiff's claim must fail under Mississippi law. As the Court granted in part and denied in part Defendant's motion, the Court discusses whether summary judgment is appropriate.

Under Mississippi law, in order to make out a prima facie case of medical negligence, a plaintiff must show the following:

> (1) the defendant had a duty to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) the defendant failed to conform to that required standard; (3) the defendant's breach of duty was a proximate cause of the plaintiff's injury, and (4) the plaintiff was injured as a result.

Vaughn v. Miss. Baptist Med. Ctr., 20 So. 3d 645, 650 (Miss. 2009) (quoting McDonald v. Memorial Hosp. at Gulfport, 8 So. 3d 175, 180 (Miss. 2009). The general rule in Mississippi is that "medical negligence may be established only by expert medical testimony, with an exception for instances where a layman can observe and understand the negligence as a matter of common sense and practical experience." Coleman v. Rice, 706 So. 2d 696, 698 (Miss. 1997).

8

Here, the only portion of Dr. Plotkin's testimony that the Court struck is Dr. Plotkin's statement regarding the authenticity of the document at issue in this case – i.e., the copy of Defendant's notes. Further, the main dispute in this case surrounds a factual issue – not one at law. That is, the issue is whether or not Defendant told Plaintiff to come to Memphis immediately for surgery or to wait until the following Thursday and come to Defendant's Columbus, Mississippi office. Dr. Lacey and Plaintiff both contend that Defendant advised Plaintiff that she did not need to be seen immediately, whereas Defendant argues just the opposite.[2] Thus, there is a material fact presented here, and this factual issue precludes a grant of summary judgment.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Exclude is granted in part and denied in part, and Defendant's Motion for Summary Judgment is denied.

So ordered on this, the _3rd__ day of December, 2010.

/s/  Sharion Aycock_____
**UNITED STATES DISTRICT JUDGE**

---

[2] At times, Defendant, instead of contending she told Dr. Lacey to advise Plaintiff to come to Memphis for surgery immediately, she just states that she "do[esn't] recall the conversation."